# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

TIMMY HERNDON,

        **Plaintiff,**

v.                                      **Case 2:12-cv-02087-JDT-cgc**

SHELBY COUNTY, et al.,

        **Defendants.**

## REPORT AND RECOMMENDATION ON DEFENDANTS LINDA BLACK AND JUDY MCGEE'S MOTION TO DISMISS AND/OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

Before the Court are Defendants Linda Black ("Black") and Sherry or Judy McGee's ("McGee")[1] (collectively "Defendants") Motion to Dismiss and/or in the Alternative, Motion for Summary Judgment (Docket Entry "D.E." #30). Defendants' Motion has been referred to the United States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)-(C). For the reasons set forth herein, it is recommended that Defendants' Motion to Dismiss be GRANTED IN PART AND DENIED IN PART and that Defendants' Motion for Summary Judgment be DENIED without prejudice as premature.

---

[1] Plaintiff filed his Complaint against "Linda Black" and "Sherry or Judy McGee" (D.E. #1), and the District Court ordered that these Defendants be recorded as such (D.E. #6). Defendants' Motion refers to themselves as "(Jamie) Linda Black" and "Judy McGhee." Defendants further assert that "Judy McGhee" has only been known by that name, by "Judy Everett," and by "Judy Jackson" but never by the name "Sherry McGee." (D.E. #30, Exh. 2). The Magistrate Judge will utilize the names as recorded by the District Court.

# I. Procedural Background

On February 6, 2012, Plaintiff filed a pro se "Complaint for Civil Rights Violations under 42 U.S.C. § 1983; and Tennessee Governmental Tort Liability under T.C.A. § 29-20-101, *et seq.*; and Tennessee Common Law Negligent Tort Liability under T.C.A. § 29-20-205, *et seq.*" ("Complaint") (D.E. #1), which included numerous exhibits in support of his allegations.[2]  On the same date, Plaintiff filed a pro se Motion for Leave to Proceed In Forma Pauperis (D.E. #2), which was granted on February 7, 2012 (D.E. #4).

On March 19, 2012, Plaintiff filed a pro se Motion for Leave to Amend Plaintiff's Statement of Claims in the Original Complaint (D.E. #5), which the District Court granted on September 19, 2012.[3] (D.E. #6).  Plaintiff's Motion included his "Amended Statement of Claims 1-6" ("Amended Complaint"), which alters and amends his original Complaint rather than entirely replacing it.[4]  On November 8, 2012, Plaintiff filed a second "Motion for Leave to File Amended Complaint to Address Deficiencies in Pleading" (D.E. #10), which the District Court denied on November 8, 2012.  (D.E. #11).

Plaintiff filed a "Notice of Appeal" and a "Motion for Leave to Appeal In Forma Pauperis" seeking to appeal to the United States Court of Appeals for the Sixth Circuit from the District

---

[2]  As these exhibits were filed as part of the pleadings, consideration of them would not convert Plaintiff's Motion to Dismiss into a Motion for Summary Judgment, Fed. R. Civ. P. 12(d), even though the motion is alternatively filed as such.

[3]  The District Court's September 19, 2012 Order additionally dismissed Shelby County and Shelby County Sheriff William Oldham as Defendants.  Further, the Order did not record Plaintiff's "John Does" or "Jane Does" as Defendants, as it did not permit service of process on unnamed or fictitious parties.  Thus, Black and McGee are the only remaining Defendants in the instant case.

[4]  Plaintiff did not refile his Amended Complaint after leave was granted; however, it is part of the record before the Court as it was attached to his Motion.

Court's November 8, 2012 Order Denying Plaintiff's Motion for Leave to File an Amended Complaint. (D.E. #12, #13). The District Court entered an Order Denying Motion for Leave to File an Interlocutory Appeal In Forma Pauperis on December 11, 2012 (D.E. #14). On December 19, 2012, Plaintiff filed a Motion for Leave to Withdraw Appeal (D.E. #16), which the District Court denied on December 28, 2012 (D.E. #17). On January 10, 2013, the United States Court of Appeals for the Sixth Circuit voluntarily dismissed Plaintiff's appeal pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure. (D.E. #18).

On February 5, 2013, Plaintiff filed a third "Motion to Amend the Plaintiff's Complaint." (D.E. #23) seeking to specify additional damages against Defendants Black and McGee. The Motion included portions of his Complaint that he sought to delete, as well as replacement language. Specifically, Plaintiff requested to delete the "Prayer for Relief" in his Complaint and substitute a new "Prayer for Relief" and to reinsert and add requests for compensatory and punitive damages against Black and McGee. The District Court granted Plaintiff's Motion on March 4, 2013. (D.E. #26).[5]

On March 21, 2013, Defendants filed a Motion to Dismiss and/or, in the Alternative, Motion for Summary Judgment. (D.E. #30). Following a March 28, 2013 scheduling conference, the United States Magistrate Judge entered an Order Staying Discovery Pending Disposition of Motion to Dismiss. (D.E. #33). On April 22, 2013, Plaintiff filed a "Rule 56(d) Motion and Alternative Motion for Enlargement of Time to Respond to Motion for Summary Judgment." (D.E. #34). On June 12, 2013, the Magistrate Judge entered an Order Denying Without Prejudice Plaintiff's Rule

---

[5] Plaintiff did not refile his Amended Complaint after leave was granted; however, it is part of the record before the Court as it was attached to his Motion.

56(d) Motion and Alternative Motion to Respond to Motion for Summary Judgment and Directing Plaintiff to Respond to Defendants' Motion to Dismiss. (D.E. #35). The Magistrate Judge determined that it would be appropriate to consider Defendants' arguments pursuant to Rule 12(b)(6) before determining if it was necessary to proceed to Defendants' requests pursuant to Rule 56 and to the discovery phase of the case. Thus, the Court is presently considering only Defendants' Rule 12(b)(6) arguments in this Report and Recommendation even though Defendants alternatively request summary judgment. On June 26, 2013, Plaintiff filed a Response in Opposition to Defendants' Motion to Dismiss. (D.E. #37). On July 8, 2013, Defendants filed a Reply to Plaintiff's Response to Defendants' Motion to Dismiss. (D.E. #38).

## II. Factual Background

Plaintiff's Complaint alleges that he was arrested on a Parole Violation Warrant and booked into the Shelby County jail on or about February 2, 2011. (Compl. ¶ 20). Plaintiff alleges that he was ordered to be released on or about February 7, 2011. (Compl. ¶¶ 11, 23 & Exh. D). Plaintiff alleges that a letter was sent via facsimile to Black on or about February 8, 2011 to "recall and delete" his warrant. (Compl. ¶25 & Exh. K). Plaintiff alleges that Black was a "Clerical Specialist" employed by the Shelby County Sheriff's Office ("SCSO") and assigned to the fugitive division. (Compl. ¶ 16 & Exh. K). Further, Plaintiff alleges that a letter was sent via facsimile to "Sherry McGee" on or about February 9, 2011 to no longer hold Plaintiff because his parole sentence had expired. (Compl. ¶ 26 & Exh. L). Plaintiff alleges that McGee was employed by SCSO as a "Release Clerical Staff, Release Supervisory, and Release Processing Manager." (Compl. ¶ 17 & Exh. L). Plaintiff alleges that he remained detained after both of these letters. (Compl. ¶ 23 & Exh. E).

On or about February 21, 2011, Plaintiff stated that he alerted his "pod counsel" in writing that he was being held unlawfully on an expired sentence. (Compl. ¶ 27 & Exh. M). Plaintiff repeated his request to his "pod counsel" in writing the following day, explaining that his parole had expired on February 7, 2011. (Compl. ¶28 & Exh. N). Plaintiff states that he received a written response from his pod counsel that stated as follows: "Informed inmate he must contact parole officer . . . Informed Ms. Johnson at release, he has to wait on State Pen." (Compl. ¶ 30 & Exh. N). Plaintiff states that, on or about February 23, 2011, Plaintiff became so "seriously mentally distressed" over his unlawful detention and over "severe tooth pain" from what he believed to be an abscess that he "temporarily lost consciousness, falling to the floor" and had to be assisted by medical staff into a wheelchair. (Compl. ¶ 30).

Plaintiff alleges that he was "intentionally and unlawfully detained beyond his expired sentence" until March 2, 2011. (Compl. ¶ 23 & Exh. E). Plaintiff alleges that Black and McGee "deliberately ignored" and "stood idly by" after receiving these notices from the Tennessee Board of Probation and Parole ("TBOPP"), which he asserts is a violation of the SCSO "Standard Operating Procedure," policies, procedures, and practices. (Compl. ¶¶ 41, 44). Plaintiff claims that, on or about March 2, 2011, "Ms. Harding" received a Memorandum via facsimile to release Plaintiff, and Plaintiff was discharged from the Shelby County jail on that date. (Compl. ¶ 31).

Based upon these allegations, Plaintiff alleges the following causes of action: (1) violations of 42 U.S.C. § 1983 ("Section 1983") for violations of the Fifth, Eighth, and Fourteenth Amendments[6] to the United States Constitution (Compl. ¶¶1, 34-46; Amend. Compl. ¶¶ 1, 34-36);

---

[6] Plaintiff's Complaint included allegations of violations of the Fourth Amendment of the United States Constitution, but these were removed in his Amended Complaint. (Compl. ¶ 35; Amend. Compl. ¶ 35).

(2) violations of Article I, Sections 7 and 8 of the Tennessee Constitution (Compl. ¶¶ 1, 35, 65); (3) false imprisonment (Compl. ¶¶ 62-67; Amend. Compl. ¶¶ 62-67); (4) negligence and negligent infliction of emotional distress (Compl. ¶¶63, 68-71; Amend. Compl. ¶¶ 1, 63, 68-69); and, (5) malicious harassment (Compl. ¶¶ 72-74).

## III. Proposed Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a claim may be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In addressing a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in the light most favorable to plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . .claim is and the grounds upon which it rests." *Id.* (citing *Twombly*, 550 U.S. at 555).

Nonetheless, a complaint must contain sufficient facts "state a claim to relief that is plausible on its face'" to survive a motion to dismiss. *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 US. 662, 678 (2009) (citing *Twombly*, 550 U.S. at

556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Id.* at 678-79.

Pleadings and documents filed by pro se litigants are to be "liberally construed," and a "pro se complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)). The basic pleading essentials are not abrogated in pro se cases. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) A pro se complaint must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Barnett v. Luttrell*, 414 Fed. Appx. 784, 786 (6th Cir. 2011) (quoting *Ashcroft*, 556 U.S. at 678) (internal quotations and emphasis omitted). District Courts "have no obligation to act as counsel or paralegal" to pro se litigants. *Pliler v. Ford*, 542 U.S. 225, 231 (2004). District Courts are also not "required to create" a pro se litigant's claim for him. *Payne v. Secretary of Treasury*, 73 Fed. Appx. 836, 837 (6th Cir. 2003).

## VI. Proposed Conclusions of Law

### A. Fifth Amendment

First, Plaintiff alleges that Black and McGee violated his Fifth Amendment right to due process of law and seeks redress pursuant to Section 1983. As grounds for his Fifth Amendment allegations, Plaintiff asserts that SCSO employees Black and McGee utilized "the badge of their authority" to unlawfully seize and deliberately detain him beyond his release date.

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. The Fifth Amendment, however, only applies to alleged deprivations by federal actors, not to private or state actors. *Scott v. Clay County*, 205 F.3d 867, 873 n.8 (6th Cir. 2000). The Fourteenth Amendment, rather than the Fifth Amendment, "restricts the activities of the states and their instrumentalities." *Id.* When a complaint cites both the Fifth Amendment and the Fourteenth Amendment in an attempt to redress alleged due process violations by state actors, the invocation of the Fifth Amendment is a "nullity" and is "redundant" of the invocation of the Fourteenth Amendment. *Id.* In the instant case, Plaintiff has done precisely that—he has invoked both the Fifth and Fourteenth Amendment in an attempt to redress alleged due process violations by SCSO employees, who are alleged to be state actors employed by Shelby County, Tennessee. Accordingly, as Plaintiff has not alleged any actions against federal actors, it is recommended that Plaintiff's Fifth Amendment claim pursuant to Section 1983 fails to state a claim upon which relief may be granted.

### B. Eighth Amendment

Next, Plaintiff alleges that Black and McGee violated his Eighth Amendment rights by detaining him after his sentence expired, and Plaintiff seeks redress pursuant to Section 1983. The Eighth Amendment provides that "cruel and unusual punishments" shall not be inflicted. U.S. Const. amend. VIII. "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). The State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *see also*

*Graham v. Connor*, 490 U.S. 386, 395 n.10 (noting that the Eighth amendment serves as substantive protection "[a]fter conviction"). Where the State seeks to impose punishment without such adjudication, such as for pretrial detainees, the pertinent constitutional guarantee is the due process clause of the Fourteenth Amendment. *Bell*, 441 U.S. at 535 n.16; *Graham*, 490 U.S. at 395 n.10.

While these general protections of the Eighth Amendment are clear, it does not appear to be entirely settled whether the Eighth Amendment applies to persons arrested on parole violations. Although, at first consideration, it may appear that a parolee would be subjected to the same protections as a pretrial detainee, a parolee has been afforded a formal adjudication of guilt in relation to his initial offense for which he was serving parole. The United States Court of Appeals for the Sixth Circuit does not appear to have addressed this issue, and at least one District Court within the Sixth Circuit assumed, *arguendo*, that the Eighth Amendment applied to parolees without directly concluding so. *Bennett Wayne Sipes v. Barbara S. Sampson*, No. 2:08-cv-213, 2009 WL 2488085, at *5 (W.D. Mich. Aug. 13, 2009). The United States Court of Appeals for the Fifth Circuit, however, has noted that the fact that a person on parole from an earlier sentence and conviction "would seem to warrant review [as a convicted prisoner] under the Eighth Amendment's prohibition against cruel and unusual punishment." *Cook v. Faulkner*, 77 F.2d 478, *2 n.2 (5th Cir. 1996) (quoting *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993)). However, neither the *Rankin* nor the *Cook* court had occasion to conclusively determine whether the Eighth Amendment applied to parolees. The *Cook* court did conclude, though, that the violation alleged in that case "would withstand scrutiny under both the Fourteenth and Eighth Amendment[s]." *Cook*, 77. F.2d at *2 n.2.

Upon review of the instant case, while there is some question as to whether the Eighth

Amendment applies to parolees, neither the United States Supreme Court nor the United States Court of Appeals for the Sixth Circuit have explicitly extended its protections to this context. Absent such an extension, it is recommended that the Fourteenth Amendment's due process protections, which Plaintiff has alleged to have been violated, apply to Plaintiff's claims. Thus, it is recommended that Plaintiff's Eighth Amendment claims fail to state a claim upon which relief may be granted.

### C. Fourteenth Amendment

Next, Plaintiff alleges that he was deprived of his Fourteenth Amendment rights[7] due to Black and McGee's deliberate indifference to effectuate his timely release. (Compl. ¶ 38). To pursue a Fourteenth Amendment claim under Section 1983, a Plaintiff must allege (1) a violation (2) of a right secured by the Fourteenth Amendment, and that (3) the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

As to the first element, the defendant's violation of a right "is measured against a backdrop of common law tort principles, including the traditional elements of tort liability as well as the defenses to liability." *Shorts v. Bartholomew*, 255 Fed. Appx. 46, 51 (2007). To establish a violation due to deliberate indifference, a plaintiff must allege that "prison officials were put on notice and then simply refused to investigate a prisoner's claim of sentence miscalculation." *Shorts*, 255 Fed. Appx. at 53 (quoting *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993)). Deliberate

---

[7] Plaintiff's Complaint alleges that he seeks to pursue his Fourteenth Amendment claim for deprivation of his liberty beyond his expired sentence under its Equal Protection clause. (Compl. ¶ 35(d); Amend. Compl. ¶ 35(c)). However, the Supreme Court has held that such a claim falls under the Due Protection clause. *Bell*, 441 U.S. at 535 n.16. Thus, it is recommended that Plaintiff's invocation of the Fourteenth Amendment be considered as an invocation of his due process rights.

indifference is a "stringent standard of fault," requiring allegations that a municipal actor "disregarded a known or obvious consequence" of his action or inaction. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (1997) (internal quotation marks omitted). A plaintiff must allege that a "decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.*

The United States Court of Appeals for the Sixth Circuit has applied the following three-prong test for Fourteenth Amendment claims of deliberate indifference:

> To establish § 1983 liability in this context, a plaintiff must [1] first demonstrate that a prison official had knowledge of the prisoner's problem and thus risk that unwarranted punishment was being, or would be, inflicted. [2] Second, the plaintiff must show that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight. [3] Finally, the plaintiff must demonstrate a causal connection between the official's response to the problem and the infliction of unjustified detention.

*Shorts*, 255 Fed. Appx. at 55 (quoting *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989)).

As to the second element, the United States Court of Appeals for the Sixth Circuit has held that it is "beyond dispute" that "when a prisoner's sentence has expired, he is entitled to release." *Shorts,* 255 Fed. Appx. at 51 (quoting *Whirl v. Kern*, 407 F.2d 781, 791 (5th Cir. 1969)). "An incarcerated inmate has a liberty interest in being released at the end of his term of imprisonment," and this "liberty interest is most often attributed to the Due Process Clause of the Fourteenth Amendment." *Shorts*, 255 Fed. Appx. at 51 (citations and internal quotations omitted); *see also McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 246 (1972) (concluding that, "when his sentence expired, the State lost the power to hold him, and that his continued detention violates his rights under the Fourteenth Amendment."). As to the third element, is "similarly beyond dispute" that officers of the county jail are persons acting under color of state law. *Shorts*, 255 Fed. Appx. at 52.

Upon review of the instant case, Plaintiff has easily plead the second and third elements. As to the second element, Plaintiff has alleged and provided evidence that his sentence expired on February 7, 2011 but that he remained detained until March 2, 2011 after the end of his term of imprisonment. (Compl. ¶ 36 & Exhs. D & E; Amend. Compl. ¶ 36). As to the third element, Plaintiff has alleged and provided evidence that Black and McGee[8] are employees of SCSO and are state actors. (Compl. ¶ 36 & Exhs. K & L; Amend. Compl. ¶ 36).

As to the more complex first element of deliberate indifference, Plaintiff has adequately alleged that McGee and Black had knowledge of Plaintiff's expired sentence, although Defendants vigorously dispute this allegation.[9] Plaintiff has attached to his Complaint notifications from TBOPP to Black and "Sherry McGee" to recall Plaintiff's parole violation and to no longer hold him on the parole sentence, which had expired. (Compl., Exhs. K & L). Plaintiff's Complaint has not provided specifics as to what Black or McGee did or did not do with respect to the notices; however, Plaintiff's allegations and evidence that he was not released until March 2, 2011 after notices were sent to Black and "Sherry McGee" on February 8 and 9, respectively, when taken in the light most favorable to Plaintiff, suffice to plead that they failed to act or took only ineffectual action to remedy Plaintiff's plight. Finally, Plaintiff's Complaint does not provide specifics as to the causal

---

[8] At least part of the dispute as to McGee is the confusion over the reference to "Sherry McGee" in the facsimile letter. However, whether Defendant McGee received notice of Plaintiff's expired sentence or whether the mistake over her name prevented her from receiving notice is an issue of fact to be determined by the trier of fact rather than upon a Rule 12(b)(6) motion. Additionally, the District Court has not yet made such a determination, as it recorded her as "Sherry or Judy McGee."

[9] Defendants have filed Black and McGee's Affidavits to dispute this element of deliberate indifference; however, such exhibits will not be considered upon consideration of this Motion to Dismiss pursuant to Rule 12(b)(6).

connection between the official's response to the problem and the infliction of unjustified detention; however, his allegations and evidence that he remained incarcerated for at least twenty-two days after notice was sent via facsimile to Black and "Sherry McGee," when taken in the light most favorable to Plaintiff, suffices to plead this element.

In response to Plaintiff's allegations, Defendants have asserted in their Motion to Dismiss that they are entitled to qualified immunity on the Fourteenth Amendment claim[10] as public servants sued in their individual capacities. *Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 677 n.* (1996) (citing *Leatherman v. Tarran Cty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 169 (1993)). In *Saucier v. Katz*, 533 U.S. 194 (2001), the United States Supreme Court set forth a two-prong test for considering whether qualified immunity applies. *Id.* at 201. First, a court should consider whether, when taken in the light most favorable to the party asserting the injury, the facts alleged show the state actor's conduct violated a constitutional right. *Id.* Second, if a violation "could be made out on a favorable view of the parties' submissions," a court should consider whether the right was clearly established in the specific context of the case. *Id.* A right is clearly established when it would be clear to a reasonable state actor that his conduct was unlawful in the situation he confronted. *Id.* Further, to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). On the other hand, a right is not clearly established if a reasonable state actor could have believed that his conduct was

---

[10] Defendants also asserted that they were entitled to qualified immunity on their Fifth and Eighth Amendment claims under Section 1983. However, this Report and Recommendation had no occasion to address this issue as it was recommended that those claims failed to state a claim upon which relief may be granted.

constitutional even if it was not. *Id.* at 641. While the subjective intent of the state actor is not at issue, a court must examine the information possessed by the state actor to determine if his actions were reasonable. *Id.* at 641.

In *Pearson v. Callahan*, 555 U.S. 223 (2009), the United States Supreme Court revisited the two-step *Saucier* protocol and determined that, while it is often appropriate and beneficial, it is not mandatory in all cases. *Id.* at 818. The *Pearson* court sought to provide greater flexibility to trial courts, as it held that adherence to "the rigid *Saucier* procedure comes with a price." *Id.* Specifically, the *Pearson* court recognized that the "procedure sometimes results in substantial expenditure of scare judicial resources on difficult questions that have no effect on the case" and that "[u]nnecessary litigation of constitutional issues also wastes the parties' resources," especially when the suit may otherwise be disposed of more readily on non-constitutional grounds. *Id.*

Ultimately, qualified immunity is a purely legal question to be determined by the Court. *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985); *Dominique v. Telb*, 831 F.2d 673, 677 (6th Cir. 1987); *Ramirez v. Webb*, 835 F.2d 1153, 1159 (6th Cir. 1987). It "potential applicability will usually appear, as here, in the allegations of the complaint, since an essential element of section 1983 is that the defendant was then acting under color of state law." *Dominique*, 831 F.2d at 677. "Thus, before filing a formal affirmative defense in his answer, the defendant could properly challenge the sufficiency of the complaint . . . on the basis that he was entitled to qualified immunity because the facts pleaded would not show that his conduct violated clearly established law of which a reasonable person should have known at the time." *Id.*

If ambiguity exists as to what information was available to the state actor at the time of the action that would affect the determination of whether a right was clearly established, such that

"under one set of facts the plaintiff's federal rights were violated and in another they were not," a court may so hold, and the matter "may then either be appealed or proceed on to the discovery stage, after which it might be possible to resolve the issue by appropriate motion for summary judgment." *Dominique*, 831 F.2d at 677 (citing *Anderson*, 107 S.Ct. at 3042-43 n.6); *see also Pearson*, 555 U.S. 223, 225 (2009) (cautioning that, "when qualified immunity is asserted at the pleading stage, the answer to whether there was a violation may depend on a kaleidoscope of facts not fully yet developed"); *Anderson*, 483 U.S. at 639 (stating that the inquiry into whether the right is clearly established requires a greater level of specificity into the actual facts known by the state actors to prevent a plaintiff from being able to merely plead a recognized constitutional violation, such as a violation of due process of law, and automatically be entitled "virtually unqualified immunity"). In any event, a ruling on the issue of qualified immunity should be made as early in the proceedings as possible "so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier*, 533 U.S. at 200; *Dominique*, 831 F.2d at 677.

Upon review in the instant case, Plaintiff's Complaint and his exhibits squarely allege on its face that two state actors—Black and McGee—violated his Fourteenth Amendment right to due process by knowingly detaining him beyond the expiration of his parole sentence. Yet, it is not clear at this stage of the case what information was or was not available to Black and McGee at the time of their decision for this Court to determine whether the right was or was not clearly established such that a reasonable state actor would or would not have known that he was violating Plaintiff's constitutional rights.[11] Specifically, while Plaintiff has alleged and provided exhibits that facsimile

---

[11] While the Court has recommended that it is not appropriate to proceed to the summary judgment stage at this point, the Court has reviewed certain factual disputes that are already alleged to be present in this case. The Court will briefly set forth those disputes for the purpose

letters were mailed to Black and "Sherry McGhee." it is not clear whether Black and/or McGee received these notices to make them aware that Plaintiff's sentence had expired. (Compl., Exhs. K & L; Mot. to Dismiss, Exh. 2, at 1) This is particularly true for McGee, who contends that she has never gone by the name Sherry McGee and who contends that she does not work at the same facility to which the facsimile letter was sent. (Compl., Exh. L; Mot. to Dismiss, Exh. 2, at 1-3). Further, the notice as to Black merely stated that the letter "serves as authorization to Recall State Parole Violation R&I#:39036," and it is disputed whether this terminology would suffice to notify her that a sentence expired. (Compl., Exh. K; Mot. to Dismiss, Exh. 1 at 2-3). Additionally, while Plaintiff generally contends that Black and McGee were SCSO employees, Black contends that she had "no authority to release persons from jail nor to process such requests." (Mot. to Dismiss, Exh. 1 at 2).

Accordingly, it is recommended that Plaintiff's Fourteenth Amendment claims successfully states a claim upon which relief may be granted. It is further recommended that Defendants' assertion of qualified immunity cannot be determined at this stage but instead should be considered, if appropriate, upon consideration of the motion for summary judgment.

### D. Tennessee Constitution

Next, Plaintiff alleges that Black and McGee violated Article I, Sections 7 and 8 of the Tennessee Constitution. Section 7 provides that as follows: "That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly

_____

of recommending why it does not appear that the issue of qualified immunity can best be addressed upon Defendants' Motion to Dismiss.

described and supported by evidence, are dangerous to liberty and ought not be granted." Tenn. Const. art. I, § 7. Section 8 provides as follows: "That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." Tenn. Const. art. I, § 8.

Tennessee has never recognized, however, a private cause of action for damages based upon violations of the Tennessee Constitution. *Bowden Bldg. Corp. v. Tennessee Real Estate Comm'n*, 15 S.W.3d 434, 446 (Tenn. Ct. App. 1999); *Lee v. Ladd*, 834 S.W.2d 323, 324-25 (Tenn. Ct. App. 1992) ("[W]e know of no authority for the recovery of damages for a violation of the Tennessee Constitution by a state officer."); *Cline v. Rogers*, 87 F.3d 176, 179-80 (6th Cir. 1996) ("Tennessee does not recognize a private cause of action for violations of the Tennessee Constitution.").

Likewise, while Plaintiff's state constitutional claims are raised alongside his Section 1983 claims, Section 1983 does not provide a cause of action for violations of state constitutional rights. *Washington v. Starke*, 855 F.2d 346, 348 (6th Cir. 1988) ("Generally, a section 1983 claim must be predicated on the deprivation of a federal constitutional right, as a right guaranteed only under state law is inadequate."); *Alexander v. Beale Street Blues Co., Inc.*, 108 F. Supp. 2d 934, 944 (W.D. Tenn. 1999) ("[P]laintiffs may not use 42 U.S.C. § 1983 to assert rights arising under state constitutions."). Thus, based upon these general principles, it does not appear Plaintiff has stated any claim upon which relief may be granted.

While the general rule is that Section 1983 does not allow for redress of state constitutional rights, the United States Court of Appeals for the Sixth Circuit has stated that Section 1983 "does not cover state constitutional violations *that are not also federal constitutional violations.*" *Huron*

*Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989) (emphasis added). Here, Section 7's provisions regarding unreasonable searches and seizures "is the state analog to the Fourth Amendment to the United States Constitution." *Moore v. City of Harriman*, 218 F.3d 551, 555 (6th Cir. 2000), *rev'd en banc on other grounds*, 272 F.3d 769 (6th Cir. 2001). Further, Section 8, which is known as the Law of the Land clause, has been held to be "synonymous" to the federal due process protection of the Fourteenth Amendment, "meaning one and the same thing." *State v. James*, 315 S.W.3d 440, 448 (Tenn. 2010) (citing *State v. Hale*, 840 S.W.2d 307, 312 (Tenn. 1992)); *see also*, *Bailey v. Blount County Bd. of Educ*, 303 S.W.3d 216, 230 (Tenn. 2010) (Article I, Section 8 and the Fourteenth Amendment have the same meaning).

Yet, even if Plaintiff's allegations under Section 1983 could arguably invoke their federal constitutional counterparts under the Fourth and Fourteenth Amendments, Plaintiff has explicitly abandoned his Fourth Amendment claim in his Amended Complaint, and Plaintiff continues to pursue his Fourteenth Amendment claim. Plaintiff's Fourteenth Amendment claim has already been addressed. Thus, Plaintiff has failed to state a claim for which relief may be granted under the Tennessee Constitution, and Plaintiff has failed to invoke any federal protections that he was not already explicitly pursuing.

### E. Negligence

Next, Plaintiff asserts a claim of negligence under Tennessee law. Plaintiff alleges that he was owed a duty of care, that the duty of care was breached by the "deliberate and intentional acts and omissions," and that the breached duties "directly and proximately resulted in the injuries and damages to the Plaintiff." Under Tennessee law, a claim of negligence requires five elements: (1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that

amounts to breach of duty; (3) an injury or loss; (4) causation in fact; and, (5) proximate, or legal, cause. *Aegis Investigative Group v. Metro. Gov't of Nashville and Davidson County*, 98 S.W.3d 159, 163 (Tenn. Ct. App. 2002).

Under the Tennessee Government Tort Liability Act ("TGTLA"), "[i]mmunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment . . . ." Tenn. Code Ann. § 29-20-205.[12] As a result of the removal of immunity, "[n]o claim may be brought against an employee or judgment entered against an employee for injury proximately caused by an act or omission of the employee within the scope of the employee's employment . . . unless the act or omission was wilful, malicious, criminal . . . ." Tenn. Code Ann. § 29-20-310(c). As Tennessee courts have explained, when the municipality's immunity is removed, the employee has absolute immunity; however, when the municipality's immunity maintains immunity, the employee's liability is limited to cases of willful, malicious, criminal acts. *Mary Matthews v. Pickett County, Tennessee*, 46 Fed. Appx. 261, 264 (Tenn. Ct. App. 2002).

Upon review in the instant case, Plaintiff has alleged that he was detained beyond the expiration of his sentence because of the negligent acts or omissions of Black and McGee, that their acts or omissions were within the scope of their employment with SCSO, and that their acts or omissions proximately caused him to suffer injury, including unlawful detention. Thus, under the TGTLA, the governmental entity's immunity has been removed pursuant to Tennessee Code Annotated Section 29-20-310(c).

---

[12] There are exceptions for when the injury "arises out of" certain actions, but it is recommended that none of the exceptions are alleged to apply to Plaintiff's Complaint.

Once the governmental entity's immunity has been removed, an employee may only be liable if his actions are alleged to be willful, malicious, criminal, or if they meet other exceptions that are not alleged to be present in this case. Plaintiff initially alleged that Black and McGee actions and omissions were "deliberate and intentional." (Compl. ¶ 69). However, Plaintiff's Amended Complaint, which attempts to amend and alter the original Complaint rather than supplementing it, amends Paragraph 69 of the Complaint to read that the acts and omissions were merely negligent rather than "deliberate and intentional." (Am. Compl. ¶ 69). Given Plaintiff's amendment, he no longer alleges that Black and McGee acted willfully, maliciously, or criminally. As such, Black and McGee's are immune from liability pursuant to Tennessee Code Annotated Section 29-20-310(c). Accordingly, it is recommended that Plaintiff's negligence claim fails to state a claim upon which relief may be granted.

### F.  Negligent Infliction of Emotional Distress

Next, Plaintiff asserts a claim of negligent infliction of emotional distress under Tennessee law. Plaintiff only explicitly alleges this against Shelby County, which has already been dismissed from this case. Although Plaintiff's initial introduction states that "Defendants" committed negligent infliction of emotional distress, absent any factual allegations whatsoever as to how Black or McGee committed tortious acts and absent any further reference to Black or McGee in his Complaint or Amended Complaint, Plaintiff has failed to state a claim upon which relief may be granted against Black and McGee for negligent infliction of emotional distress.

### G.  False Imprisonment

Next, Plaintiff asserts a claim of "false imprisonment." While false imprisonment is a recognized tort action under Tennessee law, Plaintiff's Complaint is somewhat unclear as to whether

he intends to allege a cause of action in tort or if he is reiterating his challenges under the United States Constitution and the Tennessee Constitution. Initially, Plaintiff's claim for false imprisonment generally states that it is brought "pursuant to the common and statutory laws of the State of Tennessee." (Compl. ¶ 62; Amend. Compl. ¶ 62). Then, Plaintiff states that his false imprisonment claim is brought under Article 1, Section 7 of the United States Constitution. (Amend. Compl. ¶ 64).[13] This Report and Recommendation has already addressed Plaintiff's claims under the Tennessee Constitution. *See*, *supra*, Section IV.D. However, the Court will also briefly address the tort of false imprisonment, to the extent Plaintiff seeks to pursue such a cause of action.

The tort of false imprisonment requires the detention or restraint of one against his will and the unlawfulness of the detention or restraint. *Coffee v. Peterbuilt of Nashville, Inc.*, 795 S.W.2d 656, 659 (Tenn. 1990). As already discussed in this Report and Recommendation, the TGTLA confines the liability of employees alleged to have committed tortious conduct. Under Section 29-20-205, a government entity's immunity is removed for allegedly negligent acts or omissions of its employees acting within the scope of their employment that are the proximate cause of a plaintiff's injuries.[14] Here, Plaintiff alleges that Black and McGee committed negligent acts and omissions in their employment with SCSO and that such acts or omissions were the proximate cause of his

---

[13] Plaintiff's Complaint additionally alleged that his false imprisonment claim was being pursued under the Fourth and Fourteenth Amendments to the United States Constitution (Compl. ¶ 65), but Plaintiff's Amended Complaint has removed these assertions, (Amend. Compl. ¶¶ 62-64, 66-67).

[14] Section 29-20-205 does not remove the immunity of a government entity if the injury arises out of the following: "False imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights." Tenn. Code Ann. § Section 29-20-205(2). However, it is recommended that none of these bases for false imprisonment has been alleged.

injuries. (Amend. Compl. ¶¶ 62, 66, 67). Under such circumstances, the TGTLA limits employee liability to allegations of willful, malicious, or criminal conduct, as well as other exceptions that are not alleged to be present in this case. Plaintiff's Amended Complaint clearly states that he alleges that Black and McGee acted negligently and abandons the arguments of "deliberate and intentional" action that were advanced in his initial Complaint. (Compl. ¶ 66; Amend. Compl. ¶¶ 66-67). As such, Black and McGee's are immune from liability pursuant to Tennessee Code Annotated Section 29-20-310(c). Accordingly, it is recommended that Plaintiff's false imprisonment claim fails to state a claim upon which relief may be granted.

### H. Malicious Harassment

Finally, Plaintiff alleges that Black and McGee have committed malicious harassment in violation of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.* ("THRA"). The THRA has established a civil cause of action for malicious harassment. Tenn. Code Ann. § 4-21-701. The elements of a civil malicious harassment action are derived from the criminal offense of civil rights intimidation under Tennessee Code Annotated Section 39-17-309, *Washington v. Robertson County*, 29 S.W.3d 466, 468 (Tenn. 2000), which provides that a person commits the offense of intimidating others from exercising civil rights if he maliciously and unlawfully intimidates another from the free exercise or enjoyment of a constitutional right by injuring or threatening to injure or coercing another person or by damaging or defacing any real or personal property of another person, *id.* at 473; Tenn. Code Ann. § 39-17-309(b). In addition, as the offense of civil rights intimidation was enacted to protect the "right of every person regardless of race, color, ancestry, religion or national origin to be secure and protected from fear, intimidation, harassment and bodily injury cased by the activities of groups and individuals," Tenn. Code Ann. § 39-17-

309(a), it has been held "to require the specific intent to intimidate based on civil rights motives,"

*Amy Lynn Surber v. Ralph Lee Cannon*, No. M1998-00928-COA-R3-CV, 2001 WL 120735, at *5

(Tenn. Ct. App. 2001) (citing cases).

Upon review of the instant case, Plaintiff does not allege at any point in his Complaint or

Amended Complaint that the motivation for his allegedly unlawful detention was based upon race,

color, ancestry, religion, or national origin.  Absent such an allegation, Plaintiff may not pursue a

claim for malicious harassment under THRA.  Accordingly, it is recommended that Plaintiff's claim

for malicious harassment fails to state a claim upon which relief may be granted.

## V.  Conclusion

For the reasons set forth herein, it is recommended that Plaintiff's Complaint fails to state

a claim upon which relief may be granted against Black and McGee as to his claims under the Fifth

and Eighth Amendments to the United States Constitution, Article I, Sections 7 & 8 of the

Tennessee Constitution, and under Tennessee law for negligence, negligent infliction of emotional

distress, and malicious harassment.[15]  It is further recommended that Plaintiff has successfully plead

a claim under the Fourteenth Amendment to the United States Constitution.  Accordingly, it is

recommended that Defendants' Motion to Dismiss be GRANTED IN PART AND DENIED IN

PART.

Defendants' Motion also requests that the Court consider, in the alternative, its Motion for

Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For sake of clarity,

the Magistrate Judge recommends that Defendants' Motion for Summary Judgment be DENIED

---

[15]  As it is recommended that Plaintiff has failed to state a claim for which relief may be
granted on any of his claims under Tennessee law, the Magistrate Judge did not reach the issue
of whether Defendants are entitled to immunity on these claims.

without prejudice as premature. The Magistrate Judge makes this recommendation to allow for the disposition of any claims pursuant to Rule 12(b)(6) before proceeding to discovery, if necessary. It is further recommended that, once the District Court has ruled upon the Motion to Dismiss, Defendants shall be permitted to refile their Motion for Summary Judgment, if necessary, and Plaintiff shall be permitted to refile his Rule 56(d) motion for additional discovery in response to any such motion.

**DATED** this 17th day of July, 2013.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**